RECVD'08 MAR 11 10:34USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALFRED TWO FEATHERS,                                    Civil No. 06-6335-CL

        Plaintiff,                          REPORT AND RECOMMENDATION

            v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Commission,

        Defendant.


CLARKE, Magistrate Judge.

        Plaintiff Alfred Two Feathers brings this action pursuant to section 205(g) of the

Social Security Act, as amended (Act), 42 U.S.C. § 405(g) and 1383(c)(3), to obtain

judicial review of the Commissioner's final decision denying plaintiff's application for

disability insurance benefits and supplemental security income benefits.  For the several

reasons set forth below, the decision of the Commissioner should be reversed and the

matter remanded for an award of benefits.

## BACKGROUND

        Plaintiff applied for disability insurance benefits and supplemental security income

benefits alleging disability commencing August 16, 2002.  (Tr. 70.)  His applications  were

denied.  Plaintiff requested a hearing, which was held before an Administrative Law Judge

(ALJ) on January 20, 2005.  Plaintiff, represented by counsel, appeared and testified, as

did plaintiff's wife, Charmin Two Feathers, and his son, Michael Parker; a vocational expert

also testified.  On June 21, 2005, the ALJ rendered an adverse decision, and the Appeals

Council denied plaintiff's request for review.

At the time of the hearing and the ALJ's decision, plaintiff was forty-nine years old.

Plaintiff has a high school education.  He has relevant past work experience as a general

manager of a seafood business, janitor at a grocery store, and maintenance/repairman for

a property management company.  Plaintiff alleges disability as of August 16, 2002, based

upon Crohn's disease, asthma, fibromyalgia, migraine headaches, and diabetes.  The

relevant medical evidence is discussed below.

## STANDARDS

This Court must affirm the Commissioner's decision if it is based on the proper legal

standards and the findings are supported by substantial evidence in the record.  Hammock

v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere

scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting

Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The Court considers the

record as a whole, and  weighs "both the evidence that supports and detracts from the

[Commissioner's] conclusion."  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

Where the evidence is susceptible of more than one rational interpretation, the

Commissioner's conclusion must be upheld.  Sample v. Schweiker, 694 F.2d 639, 642 (9th

Cir. 1982).  Questions of credibility and resolution of conflicts in the testimony are functions

solely of the Commissioner, Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971), but

any negative credibility findings must be supported by findings on the record and

supported by substantial evidence, Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d

735, 738 (9th Cir. 1991).  The findings of the Commissioner as to any fact, if supported by

substantial evidence, shall be conclusive.  42 U.S.C. § 405(g).  However, even where

findings are supported by substantial evidence, "the decision should be set aside if the

proper legal standards were not applied in weighing the evidence and making the

decision."  Flake v. Gardner, 399 F.2d 532, 540 (9th Cir. 1968); see also Allen v. Heckler,

749 F.2d 577, 579 (9th Cir. 1984).  Under sentence four of 42 U.S.C. § 405(g), the Court

has the power to enter, upon the pleadings and transcript record, a judgment affirming,

modifying, or reversing the decision of the Commissioner, with or without remanding the

cause for a rehearing.

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability.  Howard

v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, a claimant must

demonstrate an "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less

than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

A five-step sequential process exists for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). In the present case, the ALJ found that, although plaintiff continued to work on a part-time basis, he had not engaged in substantial gainful activity during the period under review. (Tr. 25, 32.)

In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." If the Commissioner finds in the negative, the claimant is deemed not disabled. If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three. Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). In the instant case, the ALJ found that plaintiff has Crohn's disease, diabetes mellitus, asthma, and depression, which are severe impairments. (Tr. 29, 32.) Accordingly, the inquiry moved to step three.

In step three, the analysis focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four. Yuckert, 482 U.S. at 141. In this case, the ALJ found that plaintiff's impairments, either singly or in

combination, were not severe enough to meet or medically equal any of the listed impairments.  (Tr. 29, 32.)

In step four, the Commissioner determines whether the claimant can still perform his "past relevant work."  If the claimant is so able, then the Commissioner finds the claimant "not disabled."  Otherwise, the inquiry advances to step five.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The Commissioner must first identify the claimant's residual functional capacity (RFC), which should reflect the individual's maximum remaining ability to perform sustained work activities in an ordinary work setting for eight hours a day, five days a week.  Social Security Ruling (SSR) 96-8p.  The RFC is based on all relevant evidence in the case record, including the treating physician's medical opinions about what an individual can still do despite impairments.  Id.  In this case, the ALJ found that plaintiff retains an RFC to perform a "significant range of light work" activity that provides for ready access to a restroom, and requiring a sit-stand option; he is precluded from frequent bending; and he should not be expected to follow complex or detailed instructions.  (Tr. 30, 32, 33.)  The ALJ found that plaintiff could not perform his past relevant work.  (Tr. 30, 32.)  Accordingly, the inquiry moved to step five.

In step five, the burden is on the Commissioner to establish that the claimant is capable of performing other work that exists in the national economy.  Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f).  If the Commissioner fails to meet this burden, then the claimant is deemed disabled.  Here, the ALJ found that plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the

national economy.  (Tr. 31, 33.)  Therefore, the ALJ found that plaintiff was not under a

disability.  (Tr. 31, 33.)

## DISCUSSION

Plaintiff asserts that the ALJ's decision should be reversed because it is not

supported by substantial evidence and because it is based on the application of improper

legal standards.  Plaintiff argues that the ALJ erred by (1) failing to adequately consider his

nonexertional limitations caused by his impairments and their impact on his ability to

perform work on a regular and continuing basis; and (2) failing to sustain the burden of

showing that there is other work in the national economy that he can perform because the

hypothetical posed to the vocational expert did not include all of his functional limitations.

SSR 96-8p provides in pertinent part that,

> Ordinarily, RFC is the individual's maximum remaining ability to do sustained
> work activities in an ordinary work setting on a regular and continuing basis,
> and the RFC assessment must include a discussion of the individual's abilities
> on that basis.  A "regular and continuing basis" means 8 hours a day, for 5
> days a week, or an equivalent work schedule.

See 20 C.F.R. §§ 404.1529; 404.1545; 416.929; 416.945.  The ALJ made the following

determination regarding plaintiff's RFC:  "the claimant retains the residual functional

capacity to perform light work activity that provides for ready access to a restroom.  He

requires a sit/stand option; he is precluded from frequent bending; and he should not be

expected to follow complex or detailed instructions."  (Tr. 30,32.)  She went on to state

that, "The limits to light work with a sit stand option address his complaints of fatigue and

any reduction in work capacity due to asthma.  The restriction on detailed or complex

instructions addresses limits which may occur due to his pain or depression." (Tr. 30.)  In reaching this determination, the ALJ states that she took into account "the full record, including the testimonial letters submitted by the claimant's friends, family and business associates." (Tr. 30.)  However, a review of the full record, including the medical record, plaintiff's testimony, and those testimonial letters–all of which are consistent--shows that plaintiff is not able to do sustained work activity for eight hours a day, five days a week.

The medical records are consistent in showing that plaintiff has been diagnosed repeatedly with severe or intractable or refractory Crohn's proctitis.  (Tr. 213, 237, 300, 306, 340, 360, 361.)  In December 2004, one month before plaintiff's hearing, his treating physician, Joyce Ballard, M.D., indicated plaintiff's diagnoses as:  Crohn's disease; insulin dependent diabetes; fibromyalgia; asthma; arthropathy secondary to inflammatory bowel disease[1]; and depression.  (Tr. 368.)  Dr. Ballard identified the following "abdominal symptoms or signs" experienced by plaintiff:  chronic diarrhea, bloody diarrhea, abdominal pain and cramping, malaise, fatigue, and abdominal distention; and also the following symptoms experienced by plaintiff:  multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, depression, subjective swelling, and anxiety.  (Tr. 368.)  Dr. Ballard answered "Yes" in response to the question, "Mr. Two Feathers complains of pain

---

[1]    The ALJ states in her decision that Dr. Ballard had diagnosed "anxiety" secondary to inflammatory bowel disease.  (Tr. 27.)  It appears from Dr. Ballard's records that she diagnosed "arthropathy" secondary to inflammatory bowel disease.  (See Tr. 364-65.) "Arthropathy" is "Any disease affecting a joint." Stedman's Medical Dictionary (28th ed. 2006); Dorland's Illustrated Medical Dictionary (24th ed. 1965).

in his abdomen and muscular and joint pains.  Are his complaints of pain consistent with
the symptoms that can be expected as a result of his medical diagnoses?" (Tr. 368.)

Plaintiff's gastroenterology specialist, Gregory L. Knecht, M.D., who has treated
plaintiff since June 2001, stated in a January 24, 2005, letter that plaintiff's diagnosis is
severe Crohns colitis and that, although plaintiff's symptoms have improved somewhat
since his February 2003 surgery, plaintiff "continues to have symptoms of explosive
diarrhea and abdominal discomfort [and] Symptoms of fatigue have also been a problem."
(Tr. 371.)  Dr. Knecht further states that he is continuing to evaluate plaintiff for these
ongoing symptoms and states that, "Crohns disease is a chronic disease with recurrence
in 80% of patients," and that future surgery remained a possibility.  (Tr. 371.)

The ALJ did not discount these non-contradictory treating physician's opinions in her
decision.

Plaintiff underwent a small bowel series on January 27, 2005, because of indications
of diarrhea and abdominal pain.  (Tr. 372.)

The record shows that statements by plaintiff and his family, coworkers, and
business associates as to plaintiff's symptoms and the effect of his medical condition on his
ability to work are consistent, and consistent with the medical record.

At the hearing, in response to his attorney's question as to how many days a week
he is generally able to work, plaintiff testified:  "I try to go in like a couple of times a week,
and it seems like more times than not, within the first couple of hours I get just dog tired
or I am just hurting so bad, and I can't concentrate on what I'm doing.  It's not safe to

drive." (Tr. 399.)  He went on to testify:  "A couple of hours.  It seems like two to three hours maximum a day, a couple of days a week." (Tr. 400.)  Plaintiff also testified that he has to keep his ostomy bag cleansed and that, generally, it takes him twenty to thirty minutes three to four times a day to clean it.  (Tr. 405-06.)  At the time of the hearing, plaintiff had bad diarrhea three to four days a week, and it had been progressively getting worse over the last year or year-and-one-half since the operation.  (Tr. 406.)

Plaintiff's son testified that he worked with plaintiff and that plaintiff works one to two days a week and on "a really good day, for two to three hours.  Fatigue and pain prevents him from working more.  Mr. Parker has observed plaintiff's use of the bathroom is "Constant." (Tr. 417.)  Mr. Parker has seen plaintiff "gradually getting worse again" over the last year.  (Tr. 420, 422.)  The pain is back and plaintiff is starting to go through "some of the habits" he had before his surgery.  (Tr. 422.)

Plaintiff, his wife, and son, all testified that plaintiff needed to take restroom breaks an unusual number of times during the day ("Three to 20," (Tr. 404), "six to 10 times a day more" and "five, six, eight, 10 plus times a day," (Tr. 419), "Ten or 15 times and lately more," (Tr. 424)).

To the extent that the ALJ discredited the testimonies of plaintiff and his wife and son because of the "inconsistencies" in the number of times plaintiff uses the restroom in a day, (Tr. 28), the Court finds such a reason not clear and convincing.  See Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986).  Nor are the ALJ's reasons that

plaintiff had not made these complaints since his surgery and the lack of recent medical attention. The record is consistent in showing that plaintiff suffers flareups and that his symptoms due to Crohn's disease can worsen over time. Further, the record shows that plaintiff had complained of diarrhea and abdominal pain and sought medical attention. (Tr. 370, 371 ("explosive diarrhea").) Moreover, a record of the degree of symptoms need not be reflected in the medical records; all that is necessary is that the medical record include objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(a); Cotton, 799 F.2d 1403; Smolen, 80 F.3d at 1281. Further, these additional reasons stated by the ALJ are not reasons to discredit to testimony of Mrs. Two Feathers and that of their son, Mr. Parker.

Plaintiff's coworkers and friends wrote letters on his behalf. His employer, Terry Edwards, who has been associated with plaintiff for ten years, stated in a letter dated July 23, 2003:

> Al worked full time until about mid 1999. Since then it has been a struggle for Al to work full-time. His attendance and production has lessened as his physical problems have multiplied. His work and attendance are affected by his need to be near a bathroom, his pain and his tendency to be easily fatigued. I have seen him drive to a job location and once he got there he would have to rest several minutes in the car before he got out. He actually had to take a leave of absence for a while. He now can only manage to work a couple of days a week for a few hours.

(Tr. 162.) Coworkers who had worked with plaintiff for years made similar statements: "I have noticed gradual changes in Al's physical health to the point that he wouldn't be able to leave home because he was either in pain, having problems with medications for

multiple health issues, couldn't leave the restroom or was so tired from not being able to sleep or rest at night that he couldn't function," (Tr. 166); plaintiff, who had been dependable, "became more and more fatigue[d]," and "As time went by his pain was increasing and he found it more and more necessary to stay near a restroom," and "His bad days began to take over the good days until he came to a point where he just about stopped working," (Tr. 168); "He is always in pain, always very fatigued and cannot be very far away from a bathroom," (Tr. 167); "I have observed his inability to be very far away from a restroom [and] His Constan[t] fatigue," (Tr. 164); and, when plaintiff has come in to work, "he has not always been able to stay as he has needed to be near a restroom for long periods of time," (Tr. 161).  Other people in the working community who had seen plaintiff frequently over the years, sometimes daily, also noticed that they saw plaintiff less over time and that when they saw him, they observed plaintiff's pain, fatigue, and his need to use the restroom.  (Tr. 157, 163, 165.)  Mrs. Two Feathers, wrote that, "In the past few years, I have watched my very active, always on the go, do anything for anybody husband, become a person that can barely do anything but lay in bed because of ailments or medication he has to take for them."  (Tr. 153.)

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Stout v. Commissioner, 454 F.3d 1050, 1053 (9th Cir. 2006); Dodrill, 12 F.3d at 919.  ""[T]estimony from lay witnesses who see the claimant every day is of particular

value."  Smolen, 80 F.3d at 1288 (lay testimony as to plaintiff's pain and fatigue where medical records were sparse and did not provide adequate documentation of these symptoms).  The ALJ states that she considered the testimonials of plaintiff's friends, family and business associates.  The ALJ did not give any reasons in her decision for discounting any of these testimonials.

The ALJ did not discuss plaintiff's ability to perform sustained work activity on a full time basis, as is required.  SSR 96-8p.  Notably, the ALJ stated in her decision that plaintiff's allegation of being disabled and unable to work "is refuted by the fact that he is working, albeit part time." (Tr. 29.)  If the medical evidence, along with the credible testimony of plaintiff, his wife, his son, and the lay testimonials are fully considered, the evidence does not support a finding that plaintiff is able to sustain work activities in an ordinary work setting on a "regular and continuing" basis, that is, for eight hours a day for five days a week.  See SSR 96-8p.  It is clear on this record that the ALJ could not have considered plaintiff's ability to sustain work activities on a regular and continuing basis and, therefore, she did not properly apply the correct legal standards in determining plaintiff's RFC, and the RFC assessed by the ALJ is not supported by substantial evidence.

The hypothetical posed to the vocational expert (VE) by the ALJ included the limitations reflected in her RFC:  light work; a need for jobs where there would be access to restrooms; no frequent bending; the ability to sit or stand during the day; and no complex or detailed instructions. (Tr. 427.)  The VE identified certain jobs.  When the ALJ added the requirement that plaintiff might need to have a restroom break at unscheduled

times and not at a regular break, the VE responded that "it would depend on how often and for how long," and with the clarification by the ALJ that this would mean that there would be times when plaintiff "would have to say I'm leaving now rather than I'm leaving in 30 minutes," the jobs identified would allow this.  (Tr. 427.)  However, in response to the attorney's question whether taking three to four breaks for fifteen to twenty minutes at unscheduled times would affect plaintiff's ability to do the jobs identified, the VE testified:  "He wouldn't be able to do that," and, "if it is three or four times a day that he would need 15 to 20 minutes at a time as unscheduled I don't think, and it was going to happen a regular basis [sic] [,] I don't think an employer would tolerate that."  (Tr. 428.)  In response to the attorney's question whether it would be acceptable if plaintiff wouldn't have to change the bag but had to take eight breaks a day and took about ten minutes each time, the VE stated that, "if it was on a regular basis . . . the employers aren't going to tolerate it."  (Tr. 429.)  The VE also testified that, if fatigue limited plaintiff to part-time work, that would exclude the jobs identified; if plaintiff were to miss more than two days of work a month because of his symptoms, he wouldn't be able to meet the standards of competitive employment; and an employee can miss "usually one day a month" and still meet those standards.  (Tr. 429.)

The ALJ states in her decision that the limitation included in her RFC of light work with a sit stand option addressed plaintiff's complaints of fatigue, and that the restriction on detailed or complex instructions addressed limits due to plaintiff's pain.  However, these limitations do not address either the fatigue experienced by plaintiff or his pain as reflected

in the record. And, in light of the VE's testimony that whether plaintiff could do the jobs identified if he needed to take unscheduled breaks would depend on how often and for how long, the ALJ's limitation that plaintiff have ready access to a restroom does not address those times when plaintiff needs to use the restroom an unusual number of times a day at unscheduled times. On this record, the hypothetical posed to the VE did not include all of plaintiff's nonexertional limitations relating to his pain and fatigue, and his need to use the restroom at unscheduled times, and is not supported by substantial evidence. The ALJ may not rely upon unsupported vocational testimony. Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

Additionally, the record includes new evidence which was submitted to the Appeals Council after the ALJ's decision by Theodore R. McNitt, M.D. (Tr. 8, 11.) The Appeals Council  considered this evidence and determined that Dr. McNitt's letter report did not provide a basis for changing the ALJ's decision, and denied review. Contrary to defendant's arguments, in the Ninth Circuit, this court must consider the entire administrative record, including the decision of the ALJ and the additional material submitted to the Appeals Council, in reviewing the Commissioner's finding of not disabled. Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993); Harman v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir. 2000); Durham v. Apfel, No. Civ. 98-1422-ST, 1999 WL 778243, at *11-*12 (D. Or. Sep. 22, 1999) (considering the entire record including the new evidence, citing Ramirez, 8 F.3d 1449); Vinje v. Apfel, No. Civ. 00-6045-ST, 2001 WL 210188, at *7-*8 (D. Or. Jan. 16, 2001)

(same); see Hogan v. Apfel, No. Civ. 00-126-HA, 2001 WL 213751, at *3-*4 (D. Or. Jan.

4, 2001) (citing Ramirez, 8 F.3d 1449).

Dr. McNitt states in his letter in pertinent part:

[Mr. Two Feathers] has a significant history of Crohn's disease and is status post partial colectomy and resection of the rectum with colostomy for severe Crohn's disease.  Currently with his colostomy he is doing reasonably well, having occasionally changing colostomy character with need for more frequent colostomy changes suggesting some activity in the underlying Crohn's disease, but he has not required transfusion for bleeding, and has not had clear evidence of active bleeding as a result of his Crohn's disease. He has a long past history of pain in his feet, ankles, knees, hips, low back, shoulders, elbows, which ache at an intensity of about a 8-9/10 at peak, on a scale of 1-10 with no clear radiation.  In the past he has been felt to have fibromyalgia although trigger points have been somewhat variable and it has always been unclear as to whether this represents spondyloarthropathy related to his underlying Crohn's disease, degenerative joint disease, or fibromyalgia, or if it is a combination of these elements.  Certainly his associated symptoms of chronic fatigue and occasional decreased level of awareness or mental sluggishness suggests this is probably fibromyalgia, although trigger points have been somewhat variable in the past.

Based on the severity and diffuse nature of his disease, he will miss between one and three days of work each week.  On the basis of these subjective findings, it would appear that he is not employable and should be strongly considered as far as his request for Disability.

(Tr. 390.)  Dr. McNitt's letter report of plaintiff's diagnoses and accompanying symptoms does not contradict that of other treating physician's.  He does opine that, because of his disease, plaintiff is not employable.  No reason appears in the record to disregard Dr. McNitt's opinion.

//

//

//

15 - REPORT AND RECOMMENDATION

**Conclusion**

Because the ALJ did not properly apply the correct legal standards and because the decision is not based on substantial evidence, the Commissioner's decision must be reversed.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing <u>Stone v. Heckler</u>, 761 F.2d 530 (9th Cir. 1985)).  Remand is appropriate where further proceedings would be likely to clear up defects in the administrative proceedings, unless the new proceedings would simply serve to delay the receipt of benefits and are unlikely to add to the existing findings.  <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989); <u>Schneider v. Commissioner</u>, 223 F.3d 968, 976 (9th Cir. 2000).

Here, the VE testified that, taking three to four breaks at unscheduled times for fifteen to twenty minutes, which would be needed just to keep plaintiff's ostomy bag cleansed, would preclude working at the jobs identified.  Thus, the record is fully developed and remand for further proceedings would serve no useful purpose.  On this basis, this matter should be reversed and remanded for payment of benefits.

In addition, Dr. McNitt stated in his letter report that, due to his Crohn's disease and associated symptoms of pain and fatigue, plaintiff will miss between one and three days of work each week.  The VE testified that an employee can usually miss one day a month and meet competitive standards but, if plaintiff missed more than two days of work a month, he would not meet competitive standards.  On this basis, this matter should be

reversed and remanded for payment of benefits. See Hogan, 2001 WL 213751, at *4; cf. Harman, 211 F.3d at 1179.

## RECOMMENDATION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be reversed and the matter remanded for calculation and award of benefits, and that judgment be entered accordingly.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *Objections to this Report and Recommendation, if any, are due by March 25, 2008. If objections are filed, any responses to the objections are due 14 days after the objections are filed*. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this _____ day of March, 2008.

_____
MARK D. CLARKE
United States Magistrate Judge